Luis ANGEL–TORRES, et al.,
Plaintiffs, Appellants,

v.

UNITED STATES of America,
Defendant, Appellee.

No. 82–1852.

United States Court of Appeals,
First Circuit.

Argued June 8, 1983.

Decided July 21, 1983.

Alejandro Torres Rivera, Buenos Aires, Argentina, with whom Pedro J. Varela, Hato Rey, P.R., was on brief, for plaintiffs, appellants.

Earl Kaplan, Dept. of Justice, Washington, D.C., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., was on brief, for defendant, appellee.

Before McGOWAN,* Senior Circuit Judge, COFFIN and BREYER, Circuit Judges.

BREYER, Circuit Judge.

In June 1982, the FBI obtained a warrant authorizing the search of two apartments near San Juan, Puerto Rico, for such items as "bomb making tools and paraphernalia," "bomb building books and manuals," and "typewriters and reproduction equipment used to type terrorist communiques and illegal firearms." In the course of executing the warrant, the FBI agents seized additional items outside the warrant's scope. Petitioners Luis Angel-Torres and Miguel Figueroa, the owners of the searched apartments, filed a motion in federal district court under Fed.R.Crim.P. 41(e) for the return of all items seized. The court ruled that the items covered by the warrant had been lawfully seized, but it required the government to submit affidavits justifying the seizure of the other items "by establishing a nexus between the items seized and the crime under investigation." After receiving those affidavits and placing them under seal, the court ordered the government to return several items but allowed it to keep several CB radios, walkie-talkies, duplicating machines, a typewriter, some "caricatures," a "Red Banner" symbol, and a few other things. The court stated that its dismissal of the Rule 41(e) motion with respect to these items was

without prejudice that new complaints be filed, should the government fail to pro-

---

* Of the District of Columbia Circuit, sitting by designation.

ceed with reasonable dispatch in either prosecuting or taking other dispositive action predicated on the seized property to the grand jury.

The petitioners have appealed from this denial of their motion.

 We must first consider whether the district court's order of dismissal is appealable at this time. A decision on a Rule 41(e) motion is *ordinarily* interlocutory and therefore unappealable. *DiBella v. United States,* 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962). However, *DiBella* itself recognizes an exception when "the motion is solely for the return of property and is in no way tied to a criminal prosecution *in esse* against the movant." *Id.* at 132. We are willing to find that the present motion fits within this exception. First, the petitioners' third and final "motion in aid of jurisdiction" in the district court makes it reasonable in context to consider their motions as primarily seeking the return of their property. Since Rule 41(e) automatically "suppresses" as evidence any property that is returned, we cannot be too technical about this point without destroying the *DiBella* exception. *Cf. Imperial Distributors, Inc. v. United States,* 617 F.2d 892, 895 (1st Cir.), *cert. denied,* 449 U.S. 891, 101 S.Ct. 249, 66 L.Ed.2d 116 (1980). As Chief Justice Warren explained in *Carroll v. United States,* 354 U.S. 394, 404 n. 17, 77 S.Ct. 1332, 1338 n. 17, 1 L.Ed.2d 1442 (1957), *cited with approval in DiBella,* 369 U.S. at 132, 82 S.Ct. at 660, appealability does not depend on "whether [the motion] asks for return or suppression or both." Rather, the question is whether the motion is "an independent proceeding" and therefore appealable alone, or "merely a step in the criminal case" and therefore appealable only after final judgment or other termination of the prosecution. *Carroll v. United States,* 354 U.S. at 404 n. 17, 77 S.Ct. at 1338 n. 17. The presence or absence of a suppression request may be some indication of the likely pendency of a criminal case, but it is not itself dispositive of the question, at least here.

Second, we doubt that there was a criminal prosecution "in esse" at the time the motion was decided in September 1982. This court previously has suggested that a criminal prosecution is not "in esse" until the criminal process shifts from an investigatory to an accusatory stage. *Shea v. Gabriel,* 520 F.2d 879, 882 (1st Cir.1975); *accord Sovereign News Co. v. United States,* 690 F.2d 569, 571 (6th Cir.1982); *Mr. Lucky Messenger Service, Inc. v. United States,* 587 F.2d 15, 16 (7th Cir.1978); *United States v. Premises Known as 608 Taylor Avenue,* 584 F.2d 1297, 1301 (3d Cir.1978). Had a grand jury been empanelled at the time the motion was decided, the process would have moved into an accusatory stage and the order therefore would have been at least presumptively unappealable. *See Imperial Distributors, Inc. v. United States,* 617 F.2d at 896; *see also Standard Drywall, Inc. v. United States,* 668 F.2d 156 (2d Cir. 1982). Here, however, the government had not empanelled a grand jury—nor has it done so yet.

There may be circumstances under which government pursuit of criminal activities can be said to have moved into an accusatory phase even before a grand jury has been empanelled. The government has not made us aware of any special circumstances in this case that would warrant such a conclusion, but we do know that the FBI has submitted a substantial amount of sealed material to the district court concerning its investigation; perhaps that material would contain information that would demonstrate that this case *had* entered an accusatory phase at the time the motion was decided. Rather than prolong this appeal, however, we are willing to assume on the basis of the particular facts brought to our attention in the record before us that the government's activities were not yet "accusatory" and that we can treat the order as appealable.

 We nonetheless agree with the government that the district court's order was within its discretionary power. A district court's decision to grant or deny a pre-indictment Rule 41(e) motion for return

of property turns primarily on equitable considerations; the court is entitled to balance the equities in deciding whether return is in order. *See, e.g., Pieper v. United States,* 604 F.2d 1131, 1133 (8th Cir.1979); *In re Worksite Inspection of Quality Products, Inc.,* 592 F.2d 611, 615–16 (1st Cir. 1979); *Shea v. Gabriel,* 520 F.2d at 882; *Hunsucker v. Phinney,* 497 F.2d 29, 34–35 & nn. 9–10 (5th Cir.1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975); *Centracchio v. Garrity,* 198 F.2d 382, 386 (1st Cir.), *cert. denied,* 344 U.S. 866, 73 S.Ct. 108, 97 L.Ed. 672 (1952); *In re Campola,* 543 F.Supp. 115, 117 (N.D.N.Y. 1982); *Donlon v. United States,* 331 F.Supp. 979, 980–81 (D.Del.1971). Here, the court's order reasonably balances several relevant factors.

For one thing, the order leaves the petitioners with the equivalent of an "adequate remedy at law." That is to say, the petitioners either can move to suppress the evidence (and obtain its return) at a trial in the fairly near future, or they can reapply to the district court for the return of the property if no indictment is forthcoming. As a result, the only harm that the petitioners face (assuming that the seizure is in fact unlawful) is the temporary deprivation of the seized items. However, the petitioners have shown no special need for immediate possession of the materials. *See, e.g., Offices of Lakeside Non-Ferrous Metals, Inc. v. United States,* 679 F.2d 778, 780 (9th Cir.1982); *Imperial Distributors, Inc. v. United States,* 617 F.2d at 895–96; *Standard Drywall, Inc. v. United States,* 668 F.2d at 157 n. 2; *Mason v. Pulliam,* 402 F.Supp. 978, 981 (N.D.Ga.1975), *aff'd,* 557 F.2d 426 (5th Cir.1977).

■ For another thing, the constitutionality *vel non* of the government's seizure is far less clear than the petitioners contend. *See Pieper v. United States,* 604 F.2d at 1133 (need to show clear violation of Fourth Amendment); *In re Worksite Inspection,* 592 F.2d at 616 (same); *United States v. Harte-Hanks Newspapers,* 254 F.2d 366, 369 (5th Cir.1958), *cert. denied,* 357 U.S. 938, 78 S.Ct. 1385, 2 L.Ed.2d 1551 (1958) (same). The petitioners argue that unless the warrant can be interpreted to cover the items seized, the seizure is unlawful. However, the district court and the government justified the seizure on a different legal theory—in essence, one of "plain view." *See Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); 2 LaFave, *Search and Seizure* §§ 4.11, 6.7 (1978). Under this theory, the seizure would be lawful if the FBI agents "inadvertently" came upon items whose "incriminating character" was "immediately apparent." Whether or not the petitioners eventually can show that these items fall outside the "plain view" exception, or that the seizure was invalid because it was a "pretext" for other, illegitimate purposes, *see* 2 LaFave, *Search and Seizure* §§ 4.11(e), 6.7(d); Burkoff, *Bad Faith Searches,* 57 N.Y.U.L. Rev. 70 (1982), the record does not *clearly* demonstrate that the search was unlawful.

Under these circumstances—*i.e.,* given an open question concerning the seizure's lawfulness, a limited possibility of harm to the petitioners, and the explicit provision of further relief at the district court level if necessary—the court need not have ordered these items returned. The petitioners are free to renew their motion in the district court under the terms of the court's prior order.

*Affirmed.*